Argued July 19, affirmed October 1,
reconsideration denied November 15,
petition for review denied December 27, 1979 (288 Or 253)

## STATE OF OREGON,
*Respondent,*

*v.*

## JOSEPH HAMILTON SEGNER,
*Appellant.*

(No. CR78-6-27, CA 12797)

600 P2d 916

David E. Groom, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Gillette and Campbell, Judges.

LEE, J.

## LEE, J.

Defendant appeals his conviction by jury verdict of murder, ORS 163.115.[1] There are three assignments of error. Defendant contends that the circuit court erred in failing to give defendant's requested instruction that should the jury find him innocent by reason of mental disease or defect, he would not be released into society, but instead would be placed in a mental institution.[2] Defendant further contends that the circuit court erred in denying his motion to suppress evidence of his oral admissions because they were involuntary.[3] Finally, defendant maintains that the court erred in imposing a minimum sentence of ten years, which is the sole issue that we will discuss.

The circuit court sentenced the defendant to imprisonment for life under authority of ORS 163.115(5). In addition, the court imposed a minimum term of imprisonment of ten years under ORS 144.110(1). In so doing, the court stated:

"The Court takes judicial notice of the statistical abstract of the United States for 1975 which shows

---

[1] ORS 163.115 has subsequently been amended by initiative. Prior to amendment, ORS 163.115(5) provided:

"A person convicted of murder shall be punished by imprisonment for life."

As amended, ORS 163.115(5) now provides:

"Except when a sentence of death is imposed pursuant to section 3 of this 1978 Act, a person convicted of murder shall be punished by imprisonment for life and shall be required to serve not less than 25 years before becoming eligible for parole."

The effective date of the amendment was December 7, 1978. The date of the crime committed herein was April 28, 1978.

[2] The circuit court properly refused to charge the jury regarding the disposition of the defendant in the event of a verdict of not guilty by reason of mental disease or defect. This issue was settled in *State v. Daley,* 54 Or 514, 103 P 502, 104 P 1 (1909), wherein the Oregon Supreme Court held that the disposition of the defendant was not a function of the jury. *Daley* represents the weight of authority in the United States. *See* Annotation, 11 ALR3d 737 (1967).

[3] Regarding this assignment of error, the circuit court's factual findings are supported by the evidence and are sufficient to justify the trial court's findings of voluntariness. *See Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

[399]

the life expectancy of a white male of age 41, which is the age of this defendant, to be 31.3 years. The statutes don't provide for the Court to impose a minimum term of imprisonment based on life expectancy as I read them, but since lesser offenses than this; that is, Class A felonies, would allow the Court to impose a minimum term of imprisonment of up to 10 years, the Court feels at least that it should be able to do the same thing on a conviction of murder and it does impose that minimum term."

ORS 144.110(1) provides that:

"In *any felony* case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes." (Emphasis added.)

ORS 161.525 provides that a crime is a felony:

"* * * [I]f it is so designated in any statute of this state or if a person convicted under a statute of this state may be sentenced to a maximum term of imprisonment of more than one year."

Murder is not expressly designated as a felony by statute. However, since a sentence of life imprisonment contemplates incarceration for more than one year, the punishment provision of ORS 163.115 placed murder squarely within the ORS 161.525 definition of felony. Thus, the trial court had the same discretion to invoke the enhanced sentence provision of ORS 144.110(1) for a murder conviction as it would in any other felony case.

We now consider whether the circuit court properly determined the length of the minimum sentence it imposed.

Although the statutes did not formerly expressly provide for a minimum term of imprisonment for a defendant sentenced to life imprisonment, Class A Felonies allow a minimum term of imprisonment up to ten years. ORS 161.605. For aggravated murder, ORS 163.105 authorizes 20 and 30 year mandatory minimum sentences. Therefore, it follows from the statutory scheme of penalties that a minimum sentence imposed for a lesser crime is permissible within the

limitations prescribed by ORS 144.110(1). Any other interpretation of ORS 144.110(1) would lead to the incongruous result that a felon who stops short of killing his victim would potentially be subject to more lengthy imprisonment than one who actually kills the victim. Moreover, the ten-year minimum sentence imposed herein is significantly less than the 20- and 30-year minimum sentences provided for aggravated murder under ORS 163.105. Under the facts of this case, we hold that the circuit court was within its authority in imposing the minimum ten-year sentence.

Affirmed.

**SCHWAB, C. J.,** dissenting.

While there is much logic in the majority opinion, I do not believe that ORS 144.110(1) authorizes the judiciary to speculate what the exact life span of a given individual will be and then sentence according-ly.[1] I think it is more likely that either the legislature did not think of the problem of a mandatory minimum in the case of a life sentence, other than for aggravated murder; or that if it thought of the problem, it decided that in the case of a life sentence only the Parole Board should determine the period of actual incarceration of the individual so sentenced. The latter possibility is consistent with our analysis of the extensive revision of Oregon's statutory scheme relating to sentencing enacted by the 1977 Legislative Assembly. In *State v. Dinkel,* 34 Or App 375, 579 P2d 245 (1978), *rev den* 285 Or 195 (1979), we noted that the legislature had, with minor exceptions, adopted the concept that "the parole board * * * is in the best position to determine * * * actual incarceration time * * * because, unlike trial and appellate courts, it can follow the activities and behavior of the defendant while he is in custody and best estimate his future potential." 34 Or App at 386.

For the foregoing reasons, I respectfully dissent.

---

[1] Mortality tables undoubtedly are very accurate as to classes and almost always very inaccurate as to individuals.